# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Kathy Harts
_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Illinois Healthcare &
Family Services (~~████~~),
Peggy J. Budd,
Kathy Welker

(Enter above the full name of ALL
defendants in this action. <u>Do not</u>
use "et al.")

FILED

JUN 12 2014

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Case No: 14 C 3566
(To be supplied by the Clerk of this Court)

Judge Rebecca R. Pallmeyer

**CHECK ONE ONLY:**     **AMENDED COMPLAINT**

__X__ **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S. Code** (state, county, or municipal defendants)

_____ **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE 28 SECTION 1331 U.S. Code** (federal defendants)

_____ **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. **Plaintiff(s):**

    A. Name: Kathy Harts

    B. List all aliases: N/A

    C. Prisoner identification number: N/A

    D. Place of present confinement: N/A

    E. Address: P.O. Box 402 * Oak Park, IL. 60303 / Homeless

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A. Defendant: Peggy J. Budd

    Title: Field Representative

    Place of Employment: State of Illinois

    B. Defendant: Kathy Welker

    Title: Supervisor of Vouchering Services

    Place of Employment: State of Illinois

    C. Defendant: [scribbled out] Illinois Healthcare & Family Svcs.

    Title: [scribbled out]

    Place of Employment: Illinois Healthcare & Family Svcs (HFS) / State of Illinois

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Harts v. Illinois Gaming Board (ALS #: 09-545; Charge #2009 CF 1306; EEOC #21BA90279)

B. Approximate date of filing lawsuit: est. 10/2009

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

D. List all defendants: Doug Bybee & Trudy Curtis

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Cook County

F. Name of judge to whom case was assigned: Gertrude McCarthy

G. Basic claim made: Race Discrimination - Doug Bybee conversing w/ Trudy Curtis called plaintiff (Kathy Harts) a "nigger".

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Still Pending

I. Approximate date of disposition: Still Pending

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

   A. Name of case and docket number: _Tarts v. Illinois Executive Ethics Commission, et. al. 11 CH 30891_

   B. Approximate date of filing lawsuit: _est. 08/2011_

   C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

   D. List all defendants: _Ricardo Meza, Marynic V. Foster, Gayl S. Pyatt, Randal E. Thomas, Howard Learner, James Nowlan, Shawn Denney, Spencer Leak, Sunny Chico, James Faught, Maria Kucas_

   E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _Cook_

   F. Name of judge to whom case was assigned: _Mary L. Mikva_

   G. Basic claim made: _Disputing charges of downloading sensitive information_

   H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Still Pending_

   I. Approximate date of disposition: _Still Pending_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

IV.     STATEMENT OF CLAIM

Plaintiff Kathy Harts is stating a claim of employment discrimination on the basis of violations of Title VII of the American Disabilities Act (see addendum) against Illinois Healthcare and Family Services. Two employees in particular vociferously partook in such negligent and insensitive actions. Peggy J. Budd, who at the time was the Disability Claims Specialist, but now is a Field Representative. And Kathy Welker, supervisor of Vouchering Services.

Plaintiff Kathy Harts is an employee of Illinois Healthcare and Family Services through the State of Illinois. She began her employment with the State of Illinois in August 1988 and has received stellar evaluations and promotions. Hence her rise from Office Clerk to her current position of Office Coordinator. Her duties include assisting clients with various child support cases, conducting phone interviews, pre-screen case training and various accounting duties that included arrearage calculations and other duties as assigned by supervisors. Plaintiff's duties at work required constant movement of body and hands. In August 2010, Plaintiff Kathy Harts was placed on medical leave by her primary care physician. Physician diagnosed Plaintiff with fibromyalgia and degenerative joint disorder and high cholesterol (see addendum). Also, physician sent plaintiff to several highly qualified specialists that confirmed her condition before sending plaintiff through a rehabilitation program with a physical therapists. All the physicians and therapists affirmed that Plaintiff Kathy Harts needed to have her health monitored by a physician regularly enough to prevent her diagnoses from becoming worse.

While on medical leave Plaintiff complied with all policies set forth by her employer, per labor-management agreements, HIPAA laws, and all other state-federal laws. However, on 9/5/2013, Plaintiff Kathy Harts received a letter from Peggy J. Budd that Ms. Harts benefits would be suspended if she did not return to her physician and retrieve a new Certificate of Disability form. On 9/9/2013 and 9/10/2013, Plaintiff attempted to contact Peggy J. Budd at phone number provided in letter. Plaintiff received voice message service each time she called the office of Peggy J. Budd. Plaintiff left voice message both times she called the office of Peggy J. Budd, in order to explain to her that she was ill and back in Cleveland, Ohio and could not return to Chicago, Illinois to the doctor because of her illness and financial difficulties and queried as to whether or not the situation could be handled without her traveling back to Chicago in order to get an appointment with the physician and a new signature. Plaintiff was never contacted back by Peggy J. Budd or her offices.

On 11/15/2013, Plaintiff notified of her medical benefits were suspended by a medical specialists (No Name Given) at Mercy Hospital as she attempted to contact them to find out if she could get an appointment because of some pain she had been feeling in her hands.

According to Peggy J. Budd, also known as P.J. Budd, Disability Claims Specialists, Plaintiff refused to comply with Certificate of Disability forms as should be filed by Plaintiff semi-annually.

Plaintiff has made all the necessary visits to her physician in an effort to comply with the rules of her place of employment (State of Illinois) as it pertains to retirement and benefits policies.

Office of P.J. Budd made no efforts to comply with Plaintiff once her physician informed her of Plaintiff's condition and that she would be on medical leave for a year to the date of last visit to the physician.

Office of P.J. Budd made no efforts to comply with Plaintiff once she had knowledge that Plaintiff had relocated to another State because of medical and financial stress as Plaintiff had been undergoing an intense racial discrimination case at one of the State of Illinois agencies (Illinois Gaming Board) and loss of home to foreclosure because of medical condition and financial constraints due to the Illinois Attorney General's office in collusion with Office of Executive Inspector General of Illinois attempting to terminate her services.

Plaintiff attempted contact with P.J. Budd as directed by the Chicago offices on 12/12/2013. Plaintiff left voice message on 12/12/2013 at 11:00 AM, but had never received a call back from Budd or any other member of SERS.

Member (No Name Given) from Chicago office informed Plaintiff that her benefits were suspended because mail was returned with no address on file.

Plaintiff received letter from Marilyn V. Allaman, vouchering department of which Kathy Welker is in charge, on 11/18/2013, demanding an overpayment amount of $17,478.50 at last address on file as given to all State agencies by Plaintiff.

On 11/29/2013, 12/2/2013, and 12/3/2013 contacted Union Attorney's (Mike Newman) office regarding her case and was directed to a voice message system when she gave her name to person answering the phone (no name provided). Plaintiff was contacted back on 12/3/2013 at 10:12 AM, by the Union Attorney's secretary (Minnie) who informed Plaintiff that union could not get involved with her or her situation because she had filed a lawsuit against the state. Secretary told Plaintiff, "You know how this works."

Prior to the suspension of medical benefits by Plaintiff's place of employment, she was placed under financial hardship from situation previously mentioned in lieu of the Vouchering Offices which Plaintiff was informed was headed by Kathy Welker, to whom she spoke with on November 28, 2012, terminating her financial benefits that the State is to provide in addition to the Social Security Administration benefits.

Plaintiff attempted to contact Kathy Welker twice via fax pertaining her financial benefits; (12/10/2012 and 1/2/2013)

Kathy Welker informed Plaintiff on November 28, 2012, that she was going to terminate her benefits. Also, asked Plaintiff what she had done with her settlement money awarded by Social Security Administration. Plaintiff informed Welker that she had paid some bills and paid people back that she borrowed money from. Welker told Plaintiff that she was told to ask her these questions.

Plaintiff asked Kathy Welker how she had obtained knowledge of her receiving the award from Social Security Administration. Welker stated that Social Security Administration had informed her. However, when Plaintiff contacted Social Security Administration she was told that Social Security Administration does not give out such information because they are bound by the HIPAA laws and that she would have to have addressed a written statement to them in order for such information to be released. Plaintiff was told by member(s) of Social Security Administration to request in writing from the State of Illinois SRS department whom at Social Security Administration gave out such information.

Also, told Plaintiff in this conversation that it was not her money to keep. Plaintiff told Welker that she had not been informed that she could not keep the money. Welker then informed Plaintiff that she had to give the money back and that she was told to stop her check. Plaintiff informed Welker that she did not have enough money to live off of. Plaintiff inquired if she could only take a percentage of the money, upon which Welker stated that she could not reduce the amount taken and that she had the authority to keep the check. Kathy Welker returned two checks that Plaintiff inquired about through letters (dates. See attachments) prior to their conversation on November 28, 2012.

Plaintiff drafted letter (12/10/212 and 1/2/2013) to request information from Welker as to who provided her with personal information from SSA (Social Security Administration) about Plaintiff.

Lastly, it shall be noted that the pain the Plaintiff Kathy Harts was feeling in her hands were due to a extreme elevation in her medical condition (fibromyalgia and degenerative joint disorder), according to her healthcare specialists. And because Ms. Harts could not receive the medical care necessary at the time her condition was left untreated and has become worse. It should be noted as well that without treatment high cholesterol can cause a plethora of problems ranging from heart disease to death. Plaintiff was left without enough funds and medical insurance to receive the proper medications and treatment to combat these issues.

ADDENDUM TO COMPLAINT

In an effort to make a more cognizable claim, the claim the Plaintiff Kathy Harts is making is that her job, Illinois Healthcare and Family Services, an agency of the State of Illinois, which receives some federal financial funding along with State employees contributions, is guilty of violating laws under the American with Disabilities Act (Title VII) and retaliation because she filed a racial discrimination case against another state of Illinois agency, Illinois Gaming Board. Soon after there was an investigation and charges filed against her for allegedly sending emails from my computer to another computer the Office of Executive Inspector General (OEIG) and Illinois Attorney General (IAG). Although there was no proof of her ever owning an email address and evidence of the computer being infected by a virus and other members of management monitoring the computer, a fine was still levied against her to which she has appealed. These situations does spark a question of retaliation because Plaintiff Kathy Harts never received such treatment before filing her charges against Illinois Gaming Board and defending herself against the bogus charges filed by OEIG and IAG's offices. It has been defined that retaliation does not have to be limited within the same agency of an organization, especially when an organization is as large as the State's organizations. Title VII "prohibits retaliation for protected activity. Protected activity can include actions such as filing a charge of discrimination, complaining to one's employer about job discrimination, requesting accommodation under EEO laws, participating in an EEO investigation, or otherwise opposing discrimination."


Definition of ... Degenerative Joint Disorder occurs when the protective cartilage on the ends of your bones wears down over time can damage any joint in your body, the disorder most commonly affects joints in your hands, neck, lower back, knees and hips. It gradually worsens with time, and no cure exists, but treatments can slow the progression of the disease, relieve pain and improve joint function.


Definition of ... Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals. Symptoms sometimes begin after a physical trauma, surgery, infection or significant psychological stress. In other cases, symptoms gradually accumulate over time with no single triggering event. Women are much more likely to develop fibromyalgia than are men. Many people who have fibromyalgia also have tension headaches, temporomandibular joint (TMJ) disorders, irritable bowel syndrome, anxiety and depression. While there is no cure for fibromyalgia, a variety of medications can help control symptoms. Exercise, relaxation and stress-reduction measures also may help.


Definition of ... High Cholesterol is a waxy substance that's found in the fats (lipids) in your blood. While your body needs cholesterol to continue building healthy cells, having high cholesterol can increase your risk of heart disease. When you have high cholesterol, you may develop fatty deposits in your blood vessels. Eventually, these deposits make it difficult for enough blood to flow through your arteries. Your heart may not get as much oxygen-rich blood as it needs, which increases the risk of a heart attack.

Decreased blood flow to your brain can cause a stroke. High cholesterol (hypercholesterolemia) can be inherited, but it's often the result of unhealthy lifestyle choices, and thus preventable and treatable. A healthy diet, regular exercise and sometimes medication can go a long way toward reducing high cholesterol.

(Note: Definitions were cited from Mayo Health Clinic site and American Medical Association site)

These diseases if left unchecked can worsen over time. Also, note Plaintiff has a history of hand problems brought on by the impeccable and consistent duties she performed with the State of Illinois and according to various health specialists, her current disorder could be a much worse condition brought on by the previous health ailment caused by her work duties with State of Illinois.

According to the US Department of Justice, under the ADA, "to be protected by the ADA, one must have a disability or have a relationship or association with an individual with a disability. An individual with a disability is defined by the ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment."

"…An impairment does not need to result in a high degree of functional limitation in order to be substantially limiting."

Plaintiff is protected under the ADA because she suffers from a medical condition that has left her disabled. She has loss mobility and use of left hand, especially since her benefits were suspended unlawfully. Plaintiff has a history of disorders to nervous system that were all job related that has rendered her disabled. Finally, Plaintiff has had a number of qualified specialists diagnose her as being disabled due to her medical condition. Also, Plaintiff receives disability benefits from Social Security Administration.

Also, under the Rehabilitation Act, Section 504 states that "'no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under' any program or activity that either receives Federal financial assistance or is conducted by any Executive agency …"

Plaintiff is protected by the ADA and FMLA.

Plaintiff receives disability from SSA, there is also the remainder of her reward that is to be paid through her job (as agreed upon through Illinois labor-management agreements), which is the money Kathy Welker and her department has chosen to withhold for a "overpayment", however, Plaintiff has gotten information from certain sources that until she became entangled with legal disputes with IGB, OEIG and IAG's offices that overpayment penalties were almost unheard of. Plaintiff has been informed that because all of the money are contributions the employees pay, the option is generally left to the employee to pay those benefits back, and if the employee chooses not to pay that money back then they would receive a lesser amount of money to one's contributions once they reach their retirement date.

**V.     Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Seeking relief for damages caused to my health and financial position because of the jobs' uncompromising and insensitive actions. Plaintiff seeks damages of $1,000,000 to cover long term problems and future medical services that will be needed because of the setbacks caused by the job. Also, plaintiff seeks all other relief the court deems necessary, including additional compensatory damages.

VI.     The plaintiff demands that the case be tried by a jury.   ☒ YES   ☐ NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this __12__ day of __June__, 20_14_

_Kathy Hart_
(Signature of plaintiff or plaintiffs)

_Kathy Harts_
(Print name)

_____
(I.D. Number)

_P.O. Box 402_      / _Homeless_
_Oak Park, IL. 60303_    /
(Address)